UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORIANNE MARIE QUINONES,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 19CV274-W (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 14 and 15]** |

　　　Plaintiff Corianne Marie Quinones brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for supplemental security income ("SSI"). ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 14-1 ("Pl.'s Mot.")] and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 15-1 ("Def's Mot.")].[1]

　　　This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

///

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents, ECF Nos. 15 & 16. However, the content of the documents is the same. For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot."

1

19CV274-W (BLM)

**PROCEDURAL BACKGROUND**

On January 27, 2015, Plaintiff filed an application for supplemental security income, alleging disability beginning on June 1, 2012.[2] See Administrative Record ("AR") at 26. Plaintiff's claim was denied initially on June 5, 2015, and upon reconsideration on November 18, 2015, resulting in Plaintiff's request for an administrative hearing on December 4, 2015. Id.

On June 21, 2017, a hearing was held before Administrative Law Judge ("ALJ") Donald Cole. Id. at 45-91. Plaintiff, as well as an impartial medical expert, Dr. Nathan Strahl, and an impartial vocational expert ("VE"), Ms. Bonnie Sinclair, testified at the hearing. Id. In a written decision dated October 25, 2017, ALJ Cole determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 27, 2015, the date Plaintiff's application was filed. Id. at 38-39. Plaintiff requested review by the Appeals Council. Id. at 6-8, 17. In an order dated September 24, 2018, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1, 6-8.

On February 6, 2019, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On June 5, 2019, Plaintiff filed a Motion for Summary Judgment alleging that she is entitled to judgment as a matter of law because the ALJ "made an error of law and fact by not giving the proper weight to Ms. Quinones' treating sources." ECF No. 14 at 2. If the Court does not grant SSI benefits to Plaintiff, she requests that the case be remanded to the Social Security Administration. Id.

---

[2] Previous to her January 2015 application, Plaintiff applied for Social Security Income on three different occasions. Def.'s Mot. at 2; see also AR at 93 (showing that Plaintiff filed claims on October 29, 2007, February 7, 2011, and August 29, 2013 that were determined or decided on March 17, 2009, November 2, 2011, and January 21, 2014 respectively). Defendant notes that "[b]ecause a claimant cannot receive SSI until the month after she applies, the relevant period for establishing disability was between 2015 and 2017." Def.'s Mot. at 2 (citing 20 C.F.R. § 416.501 (2017)). At the June 21, 2017 hearing, the ALJ noted that the alleged onset date of June 2012 "would invade the most recent prior SSI claim" and Plaintiff's counsel responded by stating "[w]e are more than happy to amend to resolve that issue" and that there was "no request to reopen the prior." AR at 52. The ALJ responded "all right" and stated that the adjudication period is January 27, 2015 to present. Id.

2

Defendant filed a timely Cross-motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that the ALJ properly considered the most recent opinion evidence that was consistent with the record. Def.'s Mot. at 2.

Plaintiff did not file a reply. See Docket.

## **ALJ's DECISION**

On October 25, 2017, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 27, 2015, the date Plaintiff's application was filed. AR at 26-39. The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since January 27, 2015). Id. at 28. The ALJ then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "cognitive disorder; learnings disorder; schizoaffective disorder; borderline personality disorder; post-traumatic stress disorder; and history of substance abuse, not material (20 CFR 416.920(c))." Id. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ considered Plaintiff's severe impairments and determined that her residual functional capacity ("RFC") permitted her

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours; and the claimant is limited to no interaction with the general public; and the claimant is limited to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product. The claimant is also limited to manual work and cannot work as part of a team.

Id. at 29-30. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." Id. at 31. In reaching this decision, the ALJ gave "substantial weight" to the findings of consultative examiner, Dr. Ryan Greytak. Id. at 36. The ALJ gave "great weight" to the findings of State agency reviewers, Drs. G. Rivera-Miya and K. Loomis. Id. at 35. "[L]ess weight" was given to findings by Drs. Timothy Dunnigan, Bonnie Lucks, and Nathan Strahl, and to "any and all low GAF scores in " Plaintiff's record.[3] Id. at 35-37. The ALJ gave "no weight" to the assessment of Dr. Collette Vallette, an impartial examiner. Id.

At step five, the ALJ then found that Plaintiff had no past relevant work ("PRW"), but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as an industrial cleaner or packer. Id. at 37-38. The ALJ concluded that Plaintiff had not been under a disability since January 27, 2015. Id. at 38.

## **STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

---

[3] Less weight was given to all low GAF scores because a GAF "is not a precise functional assessment, which describes specific mental work-related limitations" and can be based on unsubstantiated subjective complaints. AR at 37. Additionally, "under DSM-IV, . . . the GAF scale is no longer used to assess global functioning." Id.

conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## **DISCUSSION**

Plaintiff seeks summary judgment and argues that she is entitled to judgment as a matter of law because the ALJ "made an error of law and fact by not giving the proper weight to [Plaintiff's] treating sources." ECF No. 14 at 2. Specifically, Plaintiff argues the ALJ gave more weight to the opinions of the state reviewers who never met or examined Plaintiff than he did to the opinions of Plaintiff's treating physician, Dr. Lucks. Pl.'s Mot. at 4. Plaintiff asserts that the ALJ did this without providing the required detailed explanation for his decision and without discussing the relevant factors under 20 C.F.R. § 416.927 and 20 C.F.R. § 404.1527. Id. at 5. In the event that the Court does not grant Plaintiff SSI benefits, Plaintiff seeks an order remanding the matter to the Social Security Administration so that the treating sources may be properly considered. Id.

Defendant contends that the "ALJ reasonably relied on the more recent opinion evidence as more consistent with the record" and that this Court should affirm the ALJ's findings. Def.'s Mot. at 2.

A. Relevant Law

The appropriate standard for a claim such as Plaintiff's, that was filed before March 27,

2017[4], is that the opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (citing Lester, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id. (citing Lester, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey

---

[4] The Court notes that for claims filed after March 27, 2017, the rules in 20 C.F.R. § 404.1520C apply instead of § 404.1527 and those rules do not contain the treating physician rule that applies here because Plaintiff's claim was filed prior to March 27, 2017. See Douglas P, plaintiff, v. Andrew M. Saul, Commissioner of Social Security Administration, Defendant, 2019 WL 3338847, at *3 n.4 (C.D. Cal., July 25, 2019) ("[t]hus, the new regulations eliminate the term 'treating source,' as well as what is customarily known as the treating source or treating physician rule.) (citing 20 C.F.R. § 404.1520c; 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016)); see also Purdy v. Berryhill, 887 F.3d 7, 13 n.8. (1st Cir. 2018) ("The agency has eliminated the treating-physician rule for purposes of claims filed on or after March 27, 2017. The agency no longer 'defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [an applicant's] medical sources.' Instead, medical opinions and findings are evaluated for their persuasiveness according to a uniform set of considerations. These include the source's relationship with the claimant, but most important under the new regulations are supportability and consistency with the rest of the record.") (quoting 20 C.F.R. § 416.920c(a)) (citing § 416.920c(c) and § 416.920c(b)(2)).

v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." Townsend v. Colvin, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting Lester, 81 F.3d at 830–31) (citing Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

If a treating doctor's opinion is not afforded controlling weight,

> [t]he ALJ must consider the 'length and the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' . . . . In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of explanation provided' and 'the consistency of the medical opinion with the record as a whole.'

West v. Colvin, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); 404.1527(c)).

2. Relevant Medical History, Findings, And Testimony

Clinical psychologist Dr. Dunnigan examined Plaintiff in May 2007. AR at 301. He performed diagnostic interviews, administered a Personality Assessment Inventory, Rorschach Test, Sentence Completion Test, and Wechsler Adult Intelligence Scale – Revised, and reviewed Plaintiff's records. Id. at 301-308. Plaintiff was hard working and cooperative during the exam with restricted affect and clear and organized speech. Id. at 302. Plaintiff's Full Scale IQ and Verbal IQ results fell into the ranges of borderline and low average. Id. Her Performance IQ results fell into the low average range. Id. Plaintiff's personality assessment results showed her dominant emotion to be rage. Id. at 305. Dr. Dunnigan concluded that Plaintiff had poor intellectual abilities in comprehension and expression, limited attention concentration and short-term memory, but that her non-verbal abilities were much better. Id. at 307. Dr. Dunnigan diagnosed Plaintiff as Mixed Receptive-Expressive Language Disorder to describe her cognitive abilities and found that she met the criteria for Attention Deficit Hyperactivity Disorder, primarily

7

Inattentive. Id. Dr. Dunnigan noted that Plaintiff experiences a lot of emotional and social distress and has Borderline Personality Disorder and Post Traumatic Stress Disorder. Id.

Dr. Lucks, a clinical psychologist, treated Plaintiff from 2013-2014 along with Ms. Ashley Aleem, a registered professional clinical counselor intern working under the direction of Dr. Lucks. Id. at 35, 486, 503. When she was first rated by Ms. Aleem, MA on March 13, 2013, Plaintiff appeared disheveled and anxious, but fully oriented. Id. at 518. She also showed moderately impaired judgment, limited insight, and low intelligence and was experiencing auditory and visual hallucinations. Id. at 518-519. On November 22, 2013, Dr. Lucks diagnosed Plaintiff as having Post Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder, amphetamine dependence in remission, borderline personality disorder, and borderline intellectual functioning. Id. at 503. During the examination, Dr. Lucks noted that Plaintiff was disheveled, agitated, hyperactive, using rapid speech and cooperative, but aggressive with poor impulse control. Id. Dr. Lucks also noted that Plaintiff was oriented in all spheres, but showing moderately impaired concentration, mildly impaired recent memory, and borderline intelligence. Id. Dr. Lucks reported Plaintiff's mood and affect during the examination as anxious, labile, and expansive. Id. at 504. Plaintiff had no hallucinations or illusions and her thought process was tangential. Her content-delusions were described as grandiosity, she had no content-preoccupations, and she showed mildly impaired judgment. Id. Plaintiff was three to four months sober during the examination. Id. Dr. Lucks concluded that Plaintiff had a poor ability[5] to (1) understand, remember, and carry out complex instructions, (2) complete a normal workday and workweek without interruptions from psychologically based symptoms, and (3) respond appropriately to changes in a work setting. Id. at 505. She also concluded that Plaintiff had a fair ability[6] to (1) understand remember and carry out simple instructions, (2) maintain

---

[5] Poor is described as "[t]he evidence supports the conclusion that the individual cannot usefully perform or sustain activity." AR at 505.

[6] Fair is defined as "[t]he evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." AR at 505.

8

concentration, attention and persistence, (3) and perform activities within a schedule and maintain regular attendance. Id. Dr. Lucks found Plaintiff to be incapable of managing funds in her own best interest. Id.

The clinical record from November 22, 2013 shows that Ms. Aleem (under the supervision of Dr. Lucks) had approximately twelve forty-five to sixty-minute psychotherapy sessions with Plaintiff from March 28, 2013 to November 7, 2013. Id. at 543-544. Ms. Aleem rated Plaintiff's prognosis for achieving her therapy goals as fair. Id. at 548. In reaching that conclusion, Ms. Aleem stated that Plaintiff continued to have difficulty concentrating, difficulty regulating her emotions, handling stress, maintaining healthy and effective relationships and adhering to activities of daily living (maintaining hygiene, chores, scheduling and keeping appointments). Id. Ms. Aleem concluded that Plaintiff is unable to work and needs ongoing direction to address activities of daily living, financial and housing needs, and obtaining and complying with psychiatric services. Id. Dr. Lucks signed off on Ms. Aleem's record. Id.

On December 13, 2013, Dr. Lucks completed a Medical Report, Verification of Physical/Mental Incapacity – General Assistance form on behalf of Plaintiff. Id. at 515. The form stated that Plaintiff could perform no work. Id. It also stated that Plaintiff could not do any of the following work: (1) gardening or maintenance or (2) restricted work: sedentary/clerical nor care for herself. Id. Plaintiff was cooperating with treatment, but Dr. Lucks could not provide a date for when Plaintiff would be able to work. Id. On February 5, 2014, Dr. Lucks completed another Medical Report, Verification of Physical/Mental Incapacity – General Assistance form on behalf of Plaintiff with the same findings and an additional finding of a permanent disability. Id. at 513. The session data report from April 10, 2017 shows again that Ms. Aleem (under the supervision of Dr. Lucks) had approximately seventeen forty-five to sixty-minute psychotherapy sessions with Plaintiff from March 28, 2013 to February 5, 2014 and no additional treatment sessions until the April 10, 2017 examination. Id. at 549-550.

Dr. Greytak, an ABPN Board-Certified Psychiatrist with an ABPN Subspecialty Board-Certified Geriatric Psychiatrist, performed a Comprehensive Psychiatric Evaluation of Plaintiff on October 22, 2015. Id. at 436, 442. In preparation for the evaluation, Dr. Greytak reviewed

forms SSA-3368 and SSA-3441, the Psychological Evaluation performed by Dr. Vallette dated January 6, 2014, and the SHARP Psychiatric Discharge Summary dated April 19, 2013. Id. at 436. Dr. Greytak noted that Plaintiff arrived at the evaluation on time, alone, appropriately dressed, and cooperative. Id. At the time of the evaluation, Plaintiff was taking mirtazapine, olanzapine, Vistaril, and clonazepam. Id. at 437. During the mental status examination Dr. Greytak noted that Plaintiff was able to volunteer information spontaneously and that she appeared genuine and truthful. Id. at 439. There was no evidence of exaggeration or manipulation. Id. Dr. Greytak further noted that Plaintiff's thought process was not coherent or organized. Id. Plaintiff did not show signs of delusion, bizarre or psychotic thought content, suicidal, homicidal, or paranoid ideation, and denied auditory and visual hallucinations. Id. Plaintiff's mood was euthymic and her affect was blunted and congruent with thought content. Id. Plaintiff expressed feelings of hopelessness, helplessness, and worthlessness. Id. Plaintiff's speech was normally and clearly articulated. Id. at 440. She was alert, oriented to time, place, person, and the purpose of the evaluation and appeared to be of average intelligence. Id. Dr. Greytak found that Plaintiff gave poor effort in the concentration and calculation portion of the examination and that her ability for abstract thinking was limited. Id. Plaintiff's judgment was intact as was her insight albeit limited. Id. at 441. Dr. Greytak's diagnostic impression was

> AXIA I: Schizoaffective disorder, depressive subtype; PTSD, rule out ADHD[,] AXIS II: Rule-out borderline personality[,] AXIS III: TMJ[,] AXIS IV: Psychosocial stressors during the past year: financial limitations, unemployment[,] AXIA V: Current GAF: 50.

Id. Dr. Greytak found the following functional abilities to be mildly impaired, Plaintiff's ability to (1) understand, remember, and carry out simple one or two step job instructions, (2) relate and interact with co-workers and public, and (3) associate with day-to-day work activity, including attendance and safety. Id. at 441-442. The following functional abilities were moderately impaired, Plaintiff's ability to (1) maintain concentration and attention, persistence and pace, (2) perform work activities without special or additional supervision, and (3) maintain regular attendance in the work place and perform work activities on a consistent basis. Id. at 442.

Plaintiff's ability to do detailed and complex instructions was markedly impaired. Id. Plaintiff was not impaired in her ability to accept instructions from supervisors. Id. Finally, Dr. Greytak found that Plaintiff was not capable of handling funds at the time of her evaluation. Id.

On June 3, 2015, after reviewing Plaintiff's records, Dr. Loomis found that Plaintiff had the following impairments; schizophrenia and other psychotic disorders, borderline intellectual functioning, substance addition disorders, and ADD/ADHD. Id. at 98. However, Dr. Loomis also found that Plaintiff is (1) capable of understanding, remembering and carrying out simple one to two step (unskilled) tasks, (2) able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple/unskilled tasks, (3) able to interact adequately with coworkers and supervisors but may have difficulty dealing with the general public, and (4) able to make adjustments and avoid hazards in the workplace. Id.

On November 17, 2015, after reviewing Plaintiff's records, Dr. Rivera-Miya found that Plaintiff's impairments included affective disorders, borderline intellectual functioning, substance addition disorders, and ADD/ADHD. Id. at 115. Dr. Rivera-Miya also found that while Plaintiff had understanding and memory limitations, sustained concentration and persistence limitations, and social limitations, she was not significantly limited in her ability to (1) understand and remember very short and simple instructions, (2) remember locations and work-like procedures, (3) carry out short and simple instructions, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) work in coordination with or in proximity to others without being distracted by them, (7) make simple work related decisions, (8) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, (9) ask simple questions or request assistance, or (10) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Id. at 117-119. Dr. Rivera-Miya concluded that Plaintiff was able to sustain unskilled work for forty hours a week and to work with co-workers and supervisors and avoid hazards, but that it was best she had limited contact with the public. Id. at 115, 119.

11

After reviewing Plaintiff's medical record, on June 21, 2017, during the administrative hearing, Dr. Strahl testified that Plaintiff suffered from a cognitive disorder, Attention Deficit Hyperactivity Disorder, bipolar or schizoaffective disorder, depressive type, borderline personality disorder, post traumatic stress disorder, and substance use disorder. Id. at 52-54. Dr. Strahl also testified that Plaintiff could not do activities involving certain mathematical skills such as making change from a cash register and that Plaintiff should not have a job where she would be able to develop social relationships as that may cause issues from her borderline personality disorder to flare. Id. at 56-57. Dr. Strahl also testified that Plaintiff has moderate to marked limitations on understanding, remembering, or applying information (for things mathematically related to work), moderate limitations on concentration, persistence and pace and mild to moderate limitations on the ability to manage herself, but noted that the limitations would be marked and possibly extreme if Plaintiff were using substances that she has abused in the past such as amphetamines, methamphetamines, alcohol, Xanax, cannabis, cocaine, PCP, and salvia. Id. at 54, 57, 59. Dr. Strahl concluded that Plaintiff would be limited to simple routine repetitive tasks that are manually related as opposed to requiring cognitive skills and that while she could work with co-workers or supervisors in a generalized situation, she should not be involved in teamwork or in a situation where she may become close to her co-workers or have more than occasional interaction with the general public. Id. at 58-59. Dr. Strahl noted that his findings regarding Plaintiff's limitations when not using substances were based on his "experience, training, and educational background but not the medical record" as Plaintiff has not had an extended period of sobriety. Id. at 62.

3. Parties' Positions

Plaintiff argues that the ALJ erred by giving "little to no weight" to the opinion of Plaintiff's treating doctor, Dr. Lucks, while giving "great weight" to the state reviewers who never met or examined Plaintiff. Pl.'s Mot. at 3-4. Plaintiff asserts that she has a "vast and detailed" treatment history with Dr. Lucks which the ALJ improperly discounted. Id. Plaintiff further argues that the ALJ erred when he dismissed Dr. Lucks' findings as inconsistent, but only identified one inconsistency in a test that was administered by Dr. Lucks' intern. Id. Finally, Plaintiff argues

12

that the ALJ failed to address the required factors that must be considered when a treating doctor's opinion is not given controlling weight. Id. at 3-5.

Defendant contends that the ALJ properly evaluated the medical evidence and notes that Dr. Lucks' opinion was provided more than one year before the period of disability at issue in this litigation. Def.'s Mot. at 5. Defendant also contends that the ALJ provided specific reasons for his weighing of the evidence that are supported by the evidence. Id. Specifically the ALJ relied on Dr. Greytak's conclusions which were based on his examination of Plaintiff during the relevant time period and which "revealed generally normal findings" and the ALJ did not give full weight to Dr. Strahl because Dr. Strahl relied on his personal experience instead of Plaintiff's specific medical records in reaching his conclusions. Id. at 6-7. The ALJ also specifically stated that Dr. Lucks' opinion conflicted with her own treatment notes. Id. at 7. Defendant notes that the ALJ's reliance on Dr. Lucks' notes and the notes for Ms. Aleem was not improper. Id. at 8. Defendant further contends that Plaintiff mischaracterizes her treating history with Dr. Lucks as "vast and detailed" despite the fact that Dr. Lucks only treated Plaintiff on November 22, 2013 and April 10, 2017 which was after Dr. Lucks' November 7, 2013 opinion. Id. Finally, Defendant contends that Plaintiff's claim that the ALJ failed to consider the required specific factors is meritless because the factors "do not support giving any deference to Dr. Lucks's opinion." Id. at 9. Defendant contends that the Court should affirm the ALJ's decision, but apply the ordinary remand rule if it finds reversible error. Id. at 10.

4. Analysis

The ALJ gave "substantial weight" to the findings of Dr. Greytak and "great weight" to the findings of Drs. Rivera-Miya and Loomis. Id. at 35-36. The ALJ describes the findings of Drs. Greytak, Rivera-Miya, and Loomis, but does not state why he assigns substantial weight and great weight to their findings. Id. The ALJ notes that Dr. Greytak's findings were consistent with the RFC assigned by the ALJ. Id. at 36. The ALJ gave "less weight" to findings by Drs. Dunnigan, Lucks, and Strahl. Id. at 35-37. The ALJ gave less weight to Dr. Dunnigan's findings because his evaluation was very old and was focused on Plaintiff's ability to pass the math portion of the GED and not her ability to work. Id. at 35. The ALJ also found that Dr. Dunnigan's

13

suggestions of a more restricted level of functioning were not consistent with or supported by the record. Id. The ALJ gave less weight to the findings of Dr. Lucks because her assertions of disability were not consistent with her objective clinical notes or the notes of her counseling intern at the time. Id. The ALJ gave less weight to Dr. Strahl because his findings were less consistent and supported by the record and because Dr. Strahl was unable to "point to any significant mental status examination to support his opinion." Id. at 36. The ALJ gave "no weight" to the assessment of Dr. Collette Vallette, an impartial examiner because Dr. Vallette "is no longer an eligible impartial examiner for the Social Security Administration."[7] Id. at 37.

Plaintiff only challenges the ALJ's decision to give "little weight" to Dr. Lucks' opinion. Pl.'s Mot. Dr. Lucks' opinion was contradicted by Drs. Greytak, Rivera-Miya and Loomis. Because Dr. Lucks' opinion was contradicted by other doctors, the ALJ may reject Dr. Lucks' opinion only by providing specific and legitimate reasons supported by substantial evidence in the record. Turner, 613 F. 3d at 1222 (citing Lester, 81 F.3d at 830-31). Here, the ALJ has done just that. In assigning less weight to Dr. Lucks' opinion, the ALJ stated that her "assertions of disability [we]re not consistent with the objective clinical notes by Dr. Lucks and a counseling intern, Ms. Aleem." AR at 35. The ALJ then supports this specific and legitimate reason for assigning less weight to Dr. Lucks' opinion with substantial evidence in the record. Id. Specifically, the ALJ highlights that despite clinical notes stating that Plaintiff was "groomed appropriately, fully oriented, animated, friendly, logical, and with minimally impaired judgment although limited insight[,]" mildly limited in memory, and moderately limited in concentration with no current drug or alcohol abuses or hallucinations, Dr. Lucks concluded that Plaintiff had fair to poor limitations in all areas of mental functioning and was unable to work for purposes of a county-based program for General Assistance. Id.; see also Hernandez v. Berryhill, 707 Fed. Appx. 456, 456–458 (9th Cir. 2017) ("[t]he ALJ's determination that Doctor Hart's own treatment notes did not support the level of severity endorsed in his opinion was a "specific and legitimate reason[

---

[7] At the beginning of the hearing, Plaintiff's counsel objected to the admission of Dr. Vallette's assessment. AR at 46-47. The ALJ granted the motion to object to the admission of the assessment. Id. at 37.

14

] supported by substantial evidence" for rejecting his opinion") (citing <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692–93 (9th Cir. 2009)). The ALJ also noted that Plaintiff's "treatment regime was conservative and limited to counseling and Lamictal prescribed by Dr. Chaudhri." AR at 33. Another specific reason the ALJ gives for assigning less weight to Dr. Lucks' findings is that the form used by Dr. Lucks for determination of eligibility of general assistance, "uses criteria to determine disability that is different from those used under the Social Security Act" and notes that conclusions of disability based on criteria outside of the Social Security Regulations can be rejected outright. <u>Id.</u> (citing 20 CFR 416.904) ("[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules."). Accordingly, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for assigning less weight to the opinions of Plaintiff's treating physician.

In addition to providing specific reasons for rejecting a treating doctor's opinion, the ALJ must consider the factors provided in 20 C.F.R. § 404.1527. <u>See</u> Orn, 495 F3d at 623 ("[i]f there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' In that event, the ALJ is . . . . to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician) (citing 20 C.F.R. § 404.1527(d)(2)). The failure to do so alone constitutes reversible legal error. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 676 (9th Cir. 2017). "[C]ourts in our district have held that <u>Trevizo</u> does not 'demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them.'" <u>Kovach v. Berryhill</u>, 2019 WL 2995824, at *12 (S.D. Cal., July 9, 2019) (quoting <u>Hoffman v. Berryhill</u>, 2017 WL 3641881, at *1, *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted by 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017) (citing <u>Yantos v. Berryhill</u>, 2018 WL 899126, at *1, *6 (S.D. Cal. Feb. 14, 2018) ("[T]he Ninth Circuit has never compelled such a specific analysis. The ALJ is certainly required to consider all of the factors, but the regulations

and rulings contain no requirement that each and every factor be specifically analyzed in an ALJ's decision.")). Here, it is apparent that the ALJ considered specialization as he noted that Dr. Lucks is a psychologist. AR at 35. The ALJ also considered the length, nature, and extent of the treatment relationship as he stated that Plaintiff had contractual paperwork with Dr. Lucks for treatment in November 2012 and began treatment at Dr. Lucks' clinic in April 2013 and he identified paperwork completed by Dr. Lucks and Ms. Aleem at various points in time like November 22, 2013, December 13, 2013, and April 10, 2017. Id. at 32, 34-35. Finally, the ALJ considered the consistency of Dr. Lucks' records with her own conclusions and the criteria of the Social Security Regulations and found it to be lacking. Id. at 35. The ALJ's consideration of the § 404.1527(c) factors is sufficient as the Ninth Circuit has never required an ALJ to expressly analyze each and every factor listed as long as they have been considered. See Yantos, 2018 WL 899126, at 6 (finding the ALJ sufficiently considered the § 404.1527(c) factors where he only wrote "[t]he claimant **has been seeing** Katherine Nguyen, M.D., **a rheumatologist**, for medication **treatment of inflammatory polyarthritis** with complaints of stiffness in the back, hips, and small joints of the hands" and noting that "[t]his one sentence demonstrates the ALJ considered that Dr. Nguyen was a specialist, had an ongoing physician-patient relationship with Plaintiff, and understood the nature and extent of the treatment.") (emphasis in original) (quoting Hoffman, 2017 WL 3641881, at *4) ("[t]hus, [an] ALJ's failure to spell out his regulatory-factor rationale [is] not fatal [ ], [if] the record sufficiently shows he considered the necessary elements.").

  Even if the Court had found that the ALJ's discussion of the § 404.1527(c) factors was insufficient, the Court would also have found that any such error was harmless. Harmless error occurs if the error is inconsequential to the ultimate nondisability determination. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless. See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007). Here, the Court finds that an extensive evaluation of the § 404.1527(c) factors would not have affected the ultimate result. The ALJ not only provided specific and legitimate reasons for rejecting Dr. Lucks' opinions,

he also identified substantial evidence in the record that supports his finding that Plaintiff is not disabled. AR at 30-37. The substantial evidence comes from the objective findings of other mental health specialists and, unlike Dr. Lucks' findings, also considers test results and medical information from the relevant period of disability.[8] See Yantos, 2018 WL 899126, at 6 (stating that any error by the ALJ in evaluating the § 404.1527(c) factors would have been harmless because the basis for the ALJ's decision was the objective evidence and "an exhaustive analysis of the § 404.1527(c) factors would not have altered his ultimate disability determination.").

## **CONCLUSION**

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **August 30, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 13, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: 8/14/2019

Hon. Barbara L. Major
United States Magistrate Judge

---

[8] Most of Dr. Lucks' records were from evaluations and appointments that took place in 2013 and early 2014 and the period of time relevant to Plaintiff's claim did not begin until January 27, 2015. AR at 52.